**EIGHTY HUNDRED CLAYTON CORPORATION, d/b/a Tropicana Lanes, Respondent,**

v.

**DIRECTOR OF REVENUE, Appellant.**

No. SC 84956.

Supreme Court of Missouri,
En Banc.

July 1, 2003.

Rehearing Denied Aug. 26, 2003.

Jeremiah W. (Jay) Nixon, Attorney General, Evan J. Buchheim, Assistant Attorney General, Jefferson City, for appellant.

Branko J. Marusic, Jr., Paul J. Puricelli, St. Louis, for respondent.

MICHAEL A. WOLFF, Judge.

Is Tropicana Lanes entitled to a refund of sales tax it collected on fees charged to customers for the use of bowling shoes?

This question is governed by this Court's decision in *Blue Springs Bowl v. Spradling,* 551 S.W.2d 596 (Mo. banc 1977). Under section 144.020.1(2), Tropicana is not entitled to a refund. Fees charged to customers for the use of bowling shoes are taxable.

**Facts**

Tropicana Lanes is a bowling center in St. Louis County, Missouri, and it derives revenue from a variety of activities.[1] Tropicana does not charge an admission fee to enter its premises, but does charge a "bowling fee" for each game that a customer bowls. Customers paid the bowling fee, which averaged $2.25 per game during the refund period.

---

1. Tropicana also derives revenue from a bar and restaurant it operates, as well as from pro shop sales, pool receipts, vending machine sales, and commissions from pinball machines.

Tropicana requires that all bowlers wear bowling shoes. Customers may bring and use their own shoes or, for a fee separate from the bowling fee, use shoes provided by Tropicana. The charge for use of Tropicana's bowling shoes is labeled as "Shoe Rental" on the price board behind the cashier's counter and must be paid when the shoes are obtained. The "shoe rental" fee is a one time, flat charge that does not vary based on the amount of bowling activities in which a customer participates. Customers are allowed to wear the shoes throughout the premises of Tropicana, but they are required to return the shoes before leaving.

The shoe fee averaged $1.75 during the refund period. Tropicana received shoe fees that averaged approximately 11.5 percent of its receipts from bowling and approximately seven percent of its total receipts.

Tropicana paid sales tax on the purchase of the bowling shoes at the time it bought the shoes for the use of its customers.

Tropicana timely filed a refund claim seeking refund of sales tax on the shoe rental fees in the amount of $23,888.65, which was the sales tax paid on the receipts from the shoe fee for the refund period. The director of revenue denied Tropicana's refund claim. The Administrative Hearing Commission held that Tropicana is entitled to a refund of sales tax on its shoe fees. This Court has jurisdiction of the appeal. *Mo. Const. art. V, section 3.*

**Fees for Bowling**

Section 144.020.1(2) imposes "a tax equivalent to four percent of the amount paid for admission and seating accommodations, or fees paid to, or in any place of amusement, entertainment or recreation, games and athletic events; ..." The precise issue in *Blue Springs Bowl v. Spradling,* 551 S.W.2d 596, was whether that section imposes tax "on receipts derived from fees or charges paid for participating in the activity of bowling at commercial bowling establishments." *Id.,* at 597. The Court held that the tax applies to all such fees and charges in a bowling establishment for bowling activities. In the years since *Blue Springs Bowl,* the legislature has changed only the rate of tax, not the governing language. There is no reason to deviate from the Court's earlier interpretation. *See also Bally's LeMan's Family Fun Centers, Inc. v. Director of Revenue,* 745 S.W.2d 683, 685 (Mo. banc 1988).

Moreover, section 144.020.1(2) plainly provides for a sales tax to be imposed: (1) on sums paid for admissions to places of amusement, etc.; (2) on amounts paid for seating accommodations therein; and (3) on all fees paid to, or in places of amusement, etc. *L & R Distrib. Co. v. Missouri Dep't of Revenue,* 648 S.W.2d 91, 95 (Mo. 1983). Thus, under section 144.020.1(2), all fees paid in or to a place of amusement are taxable, even if the fee is not strictly for amusement activities.

Tropicana argues that this Court's holdings in *Six Flags Theme Parks, Inc. v. Director of Revenue,* 102 S.W.3d 526 (Mo. banc 2003); *Westwood Country Club v. Director of Revenue,* 6 S.W.3d 885 (Mo. banc 1999); and *Greenbriar Hills Country Club v. Director of Revenue,* 47 S.W.3d 346 (Mo. banc 2001), support the proposition that not all amounts or charges in a place of amusement are subject to tax. Tropicana argues that there is no meaningful way to distinguish the use of bowling shoes from the rentals of golf carts in *Westwood* and of video games in *Six Flags.*

The director asks the Court to overrule *Westwood* and its progeny. It is not necessary to address that issue because *Blue Springs Bowl v. Spradling* controls this case. In *Blue Springs Bowl,* bowling alley

owners protested the imposition of a sales tax on gross receipts derived from fees or charges paid for participating in bowling. This Court held that fees paid in commercial bowling establishments for participation in bowling are taxable, because such places clearly fall within one or more of the categories of places of "amusement, entertainment or recreation" mentioned in section 144.020.1(2). *See Blue Springs Bowl,* 551 S.W.2d at 598. Furthermore, this Court held section 144.020.1(2) was clear and unambiguous in its imposition of a sales tax on receipts paid for admissions to places of amusement, entertainment, or recreation, receipts from amounts paid for seating accommodations in such places, and receipts from fees paid to or in such places. *Id.* at 599.[2]

As in *Blue Springs Bowl,* Tropicana operates a commercial bowling establishment, which has been recognized by this Court as a place of amusement. Within this place of amusement, Tropicana charges its customers a fee to use bowling shoes, in order to participate in the activity of bowling. This fee is the type of fee this Court has held was intended to be subject to the amusement tax under section 144.020.1(2).[3]

The commission's decision is reversed.

WHITE, C.J., BENTON and STITH, JJ., concur;

LIMBAUGH, J., dissents in separate opinion filed;

PRICE and RICHARD B. TEITELMAN, JJ., concur in opinion of LIMBAUGH, J.

STEPHEN N. LIMBAUGH, JR., · Judge, dissenting.

I respectfully dissent.

The majority holds that under the doctrine of *stare decisis,* Tropicana Lane's tax liability for the rental or lease of bowling shoes is governed by this Court's decision in *Blue Springs Bowl v. Spradling,* 551 S.W.2d 596 (Mo. banc 1977). I would hold that under this very same doctrine, the question of Tropicana's tax liability is governed, instead, by this Court's decision in *Westwood Country Club v. Director of Revenue,* 6 S.W.3d 885 (Mo. banc 1999).

In *Blue Springs Bowl,* this Court held that fees or charges paid for participating in the activity of bowling at commercial bowling establishments are subject to tax under section 144.020.1(2), which imposes a tax on "amounts paid for admission and seating accommodations, or fees paid to, or in any place of amusement, entertainment or recreation, games and athletic events." Sec. 144.020.1(2). Relying on this holding, the majority concludes that Tropicana Lanes is not entitled to a refund of sales tax it collected on fees charged to customers for the use of bowling shoes, as these fees are paid "in or to a place of amuse-

---

2. This Court in *Blue Springs Bowl* said that "in addition to those things already taxed in connection with any place of amusement, etc., namely, 'admission and seating accommodations', the sales tax also is imposed on such other fees as are paid to or in said establishments. That simple general language is not limited or qualified in any way. It applies to *all* such fees paid to or in such establishments." 551 S.W.2d at 599.

3. This Court has held that, under the doctrine of *stare decisis,* a decision of this Court should not be lightly overruled, particularly where the opinion has remained unchanged for many years and is not clearly erroneous and manifestly wrong. *See Southwestern Bell Yellow Pages, Inc. v. Director of Revenue,* 94 S.W.3d 388, 391 (Mo. banc 2002). Moreover, on a matter of statutory interpretation, it is significant that the legislature has amended the statute, in this case by changing the rate from three to four percent, without altering the language describing the activity to be taxed.

ment." But this conclusion is overly simplistic, because *Blue Springs Bowl* did not address the precise issue presented in this case. Here, in contrast, we are asked to determine whether the rental or lease of equipment utilized in a place of amusement is taxable under subsection 8 of section 144.020.1. This was the exact issue addressed in *Westwood Country Club.*

In *Westwood Country Club,* this Court examined the potential conflict between subsections 2 and 8 of section 144.020.1, and determined that subsection 8, which imposes a sales tax on the rental or lease of tangible personal property unless sales taxes were paid by the renter or seller on the original purchase of the property, is more specific than subsection 2 "in that it expressly deals with the lease of rental of personal property upon which sales tax has already been paid." 6 S.W.3d at 889. In accordance with the rules of statutory construction, this Court then applied subsection 8 to the controversy and ultimately concluded that because Westwood had paid sales tax on the original purchases of its golf carts, it was not liable for sales tax on the fees charged for their usage. *Id.*

I see no reason to depart from this analysis. Tropicana Lanes, which likewise paid sales tax on the original purchase of its rental property, should not be liable for sales tax under section 144.020.1 merely because it is the proprietor of a bowling establishment. There is simply no principled distinction between the rental of golf carts from a country club and the rental of bowling shoes from a commercial bowling establishment. Nevertheless, relying on the doctrine of *stare decisis* and this Court's decision in *Blue Springs Bowl,* the majority finds this lack of meaningful distinction meaningless. But such a distinction is necessary, for in its absence, *Blue Springs Bowl*—as interpreted by the majority—cannot be reconciled with the holding *of Westwood Country Club.* To be sure, to the extent that *Blue Springs Bowl* can be read as creating liability under subsection 2 for *all* fees paid within a place of amusement, including those charged for the rental or lease of personal property, it is no longer good law.

For these reasons, the doctrine of *stare decisis* does not require the imposition of tax liability for fees collected on the rental of bowling shoes. In fact—and ironically—adherence to this doctrine requires just the opposite. The doctrine of *stare decisis* directs that, once a court has "laid down a principle of law applicable to a certain state of facts, it [must] adhere to that principle, and apply it to all future cases, where facts are substantially the same; regardless of whether the parties and property are the same." BLACK'S LAW DICTIONARY 1406 (6th ed.1990). The principle of law announced in *Westwood County Club* is, without question, equally applicable to the case at hand.

Accordingly, I would affirm the decision of the Administrative Hearing Commission and hold that, under this Court's opinion in *Westwood Country Club,* Tropicana Lanes is entitled to a refund of sales tax collected on fees charged to customers for the use of bowling shoes. To hold otherwise is to ignore, rather than obey, the principle of *stare decisis.*