**MUSIC CITY CENTRE
MANAGEMENT, LLC,
Respondent,**

v.

**DIRECTOR OF REVENUE, Appellant.**

No. SC 89547.

Supreme Court of Missouri,
En Banc.

Aug. 4, 2009.

**466**

Chris Koster, Attorney General, James R. Layton, State Solicitor, Gary L. Gardner, Assistant Attorney General, Jefferson City, MO, for Appellant.

Kenneth N. Hall, Reece Moore & Pendergraft, LLP, Fayetteville, AR, for Respondent.

PATRICIA BRECKENRIDGE, Judge.

Music City Centre Management, LLC, produces and promotes live entertainment attractions at its theater in Branson. From 2003 through 2005, Music City sold tickets to its theater attractions through contractual arrangements with Branson-based businesses. Music City reported the amounts it received from sales to those businesses as gross taxable amounts and remitted the sales tax due on the gross taxable amounts to the director of revenue. It subsequently sought refunds for the sales tax it paid on the basis that its transactions with the Branson-based businesses did not constitute retail sales because the tickets were for resale. The director of revenue denied the refund requests, and Music City sought review from the administrative hearing commission. The commission held that the sale of Music City's tickets to the Branson-based businesses qualified for the "resale" exemption, so the transactions were not subject to sales tax and Music City was entitled to a refund of more than $83,000, plus interest. The director appealed. Because the appeal involves the construction of the revenue laws of the state, this Court has jurisdiction. Mo. Const, art. V., section 3.

Music City is not liable for sales tax on its sales of tickets to the Branson-based businesses where the tickets were purchased for resale for cash individually or as part of a bundled product, but it is liable for sales tax on transactions where the tickets were not for resale and, instead, were purchased to be given to customers who take timeshare tours. This Court affirms, in part, and reverses, in part, the decision of the commission and remands the case to the commission.

**Factual and Procedural Background**

From 2003 through 2005, Music City marketed tickets to its live entertainment attractions at its theater in Branson through contractual arrangements with Branson-based businesses. The businesses purchased tickets at a discounted rate from Music City and then did one of three things with the tickets:

(1) The businesses resold some of the tickets to customers for cash. The businesses determined the amount of the ultimate price purchasers paid for the ticket, although they usually charged the same amount Music City charged at its box office, which included sales tax.

(2) The businesses that were timeshare companies gave some of the tickets, without charge, to customers in ex-

change for the customers taking time-share sales tours.

(3) Some businesses bundled the tickets together with other products, such as a discounted meal at a restaurant and two nights lodging, and then offered that package for a single price to customers, payable in cash.

Music City reported to the director of revenue the amounts it received from the businesses for the tickets, less the inclusive sales tax amounts, as gross taxable amounts and remitted the sales tax due on the gross taxable amounts.

Music City subsequently filed refund claims for the sales tax it paid on gross amounts received from the Branson-based businesses for the filing periods of April through June 2003, July through September 2003, and October 2003 through December 2005. It asserted that it was not liable for sales tax because the sales of tickets to the Branson-businesses did not constitute retail sales, as the tickets were sold for resale and, therefore, were excluded from sales tax. The director denied the refund claims, finding that the refund request did not qualify under section 144.020.1(2),[1] and that all fees paid to or in a place of amusement or entertainment are subject to tax.

Music City filed petitions with the commission, challenging the director's denials of its refund claims, and the proceedings on the petitions were consolidated. Music City and the director filed a joint stipulation of facts. The commission held that all of Music City's sales of its tickets to the Branson-based businesses were resales and, pursuant to the "resale exemption," were excluded from sales tax, so Music City was entitled to a refund of $83,113, plus interest. In analyzing the three types of "sales" of tickets by the Branson-based businesses, the commission determined that the cash sales, ticket exchanges for timeshare tours and sale of bundled products all met the definition of a "resale." In so holding, the commission found that liability of the Branson-based businesses for sales tax on their "sales" of the tickets was not relevant to the determination of whether Music City's sales of the tickets were resales. The director appeals.

On appeal, the director raises one claim of error. The director asserts that Music City is not entitled to a resale exemption from tax on amounts the businesses paid for tickets. The director contends the sale of tickets by Music City is taxable as an amount paid to place of amusement, entertainment or recreation at retail pursuant to section 144.020.1(2), and that in the subsequent "sale" of the tickets by the Branson-based businesses nothing is paid *in or to* a place of amusement, so those transactions are not subject to sales tax. The director asserts that the legislature intends the resale exclusion to apply only when sales tax can be imposed in a subsequent sales transaction. Because the director believes that the sales by the Branson-based businesses would escape taxation, the director argues that the resale exclusion does not apply to the sales by Music City.

## Analysis

Missouri imposes a tax on sellers engaging in the business of selling tangible personal property or rendering taxable service at retail. Section 144.020.1 " 'Sale at retail' means any transfer made by any person engaged in business as defined herein of the ownership of, or title to, tangible personal property to the purchaser, for use or consumption and not for resale in any form as tangible personal property, for a valuable consideration."

1. All statutory references are to RSMo Supp. 2007, unless otherwise noted.

Section 144.010.1(10). Sales in Missouri of admission tickets to places of entertainment expressly are included within the term "sale at retail." Section 144.010.1(10)(a). The applicable tax rate is "[a] tax equivalent to four percent of the amount paid for admission and seating accommodations, or fees paid to, or in any place of amusement, entertainment or recreation, games and athletic events." Section 144.020.1(2).

■■ A "sale at retail" includes only transfers made " 'for use or consumption by the buyer.' " and not transfers made for resale. *Kansas City Power & Light Co. v. Dir. of Revenue*, 83 S.W.3d 548, 550 (Mo. banc 2002) (quoting section 144.010.1(10)). "In other words, if a person purchases a tangible or intangible product in order to sell it to another, the purchase is not subject to sales tax." *Id.* at 551. This exemption to the imposition of sales tax is known as the "resale exemption." *President Casino, Inc. v. Dir. of Revenue*, 219 S.W.3d 235, 238 (Mo. banc 2007). The language of section 144.010.1(10) providing the basis for the resale exemption is stated in terms of "tangible personal property," and the resale exemption would be limited to "tangible personal property" if subparagraph (10) did not go on to say that "[w]here necessary to conform to the context of sections 144.010 to 144.525 and the tax imposed thereby, the term 'sale at retail' shall be construed to embrace: (a) Sales of admission tickets, cash admissions, charges and fees to or in places of amusement, entertainment and recreation, games and athletic events[.]" Section 144.010.1(10)(a). As a result, the resale exemption, inherent in the definition of "sale at retail," applies equally to the sale of admission tickets, a service.[2] A sale of

an admission ticket is taxable if the admission ticket was sold for use or consumption and not, instead, for resale. Section 144.010.1(10). "Put simply, there must be a 'sale at retail' in order for the 'resale' exclusion of that section to apply." *ICC Mgmt., Inc. v. Dir. of Revenue*, 290 S.W.3d 699, 703 (Mo. banc 2009) (quoting *Westwood Country Club v. Dir. of Revenue*, 6 S.W.3d 885, 888 (Mo. banc 1999)).

■■ The "sale for resale" exemption avoids multiple taxation of the same property as it passes through the chain of commerce. *Sipco, Inc. v. Dir. of Revenue*, 875 S.W.2d 539, 541 (Mo. banc 1994). The resale exemption complies with "[t]he purpose of Missouri's sales tax system[, which] is to tax property once and not at various stages in the stream of commerce, regardless of who is receiving the benefit of the property." *Six Flags Theme Parks, Inc. v. Dir. of Revenue*, 102 S.W.3d 526, 530 (Mo. banc 2003). Just as the resale exemption exists to secure that the "tax system [ ] tax[es] property [only] *once* and not at various stages in the stream of commerce," *ICC Mgmt., Inc.*, 290 S.W.3d at 702– (quoting *Westwood Country Club*, 6 S.W.3d at 888) (emphasis added), it is equally important that the tax system seeks to tax property no less than *once*. Consistent with this purpose, "[t]he resale exemption applies only where the item purchased is later subject to a taxable sale at retail." *ICC Mgmt.*, 290 S.W.3d at 700.

This Court, therefore, must determine whether the tickets Music City sold were sold for the purpose of resale in a taxable sale at retail so as to entitle Music City to refunds on prior sales taxes paid. The director argues that none of the tickets Music City sold would qualify for the resale exemption because the subsequent

---

2. Admission tickets are not tangible or intangible personal property; they are the service of amusement. *Six Flags Theme Parks, Inc. v.* *Dir. of Revenue*, 102 S.W.3d 526, 528 (Mo. banc 2003).

sales are not subject to tax. The basis for her argument is that the statute taxes only payments made "to or in the places of amusement, entertainment and recreation, games and athletic events," citing section 144.010.1(10)(a). Because the payment for subsequent sales by the Branson-based businesses would be made to those businesses, and not to or in a place of entertainment, i.e., Music City, the director argues that the sales are not taxable. The director misconstrues the applicable statutory provisions.

■ Section 144.020.1(2) imposes a tax on "the amount paid for the admission and seating accommodations, or fees paid to, or in any place of amusement, entertainment or recreation, games and athletic events." This Court has found that section 144.020.1(2) "plainly provides for a sales tax to be imposed: (1) on sums paid for admissions to places of amusement, etc.; (2) on amounts paid for seating accommodations therein; and (3) on all fees paid to, or in places of amusement, etc." *Eighty Hundred Clayton Corp. v. Dir. of Revenue*, 111 S.W.3d 409, 410 (Mo. banc 2003). Section 144.010.1(10)(a) includes in the term "sale at retail" "[s]ales of admission tickets, cash admissions, charges and fees to or in places of amusement, entertainment and recreation, games and athletic events." Neither statutory provision limits its application to circumstances where the payment of the cost of the admission ticket is made to or in the place of amusement, entertainment and recreation. In-

stead, the language of the two statutes shows the legislature's intention to tax the amount charged for admission to places of amusement, entertainment and recreation, games and athletic events without regard to whom or where the payment for admission is paid.[3]

■ The issue, then, is whether the sales by Music City were for the purpose of a taxable resale by the Branson-based businesses. The record demonstrates that some of the discounted tickets sold by Music City to businesses were purchased for resale to customers for cash, either individually or as part of a package with other retail items.[4] These sales by the businesses to their customers would be subject to sales tax, and the sale of these tickets from Music City to the businesses falls clearly within the statutorily established definition of "resale." Other discounted tickets, however, were not sold for the purpose of resale. Instead, Music City sold timeshare businesses the discounted tickets, and those businesses gave these tickets away to persons in exchange for the person taking a timeshare tour. The giving away of these tickets free of charge does not constitute a taxable retail sale, and, therefore, the sale of these tickets by Music City does not fall into the resale exemption. As there was never a taxable sale at retail, there cannot be a resale.

All sales of tickets by Music City to businesses for resale, i.e. all tickets that were sold for the purpose of resale to customers and for which those businesses

---

3. The provision in section 144.010.1(10), deleting any irrelevant language, reads, "the term 'sales at retail' shall be construed to embrace: (a) Sales of admission tickets ... to ... any places of amusement, entertainment, and recreation, games and athletic events." The language of section 144.020.1(2) that imposes the sales tax, deleting any irrelevant portion, would read, "The rate of tax shall be as follows: ... (2) A tax equivalent to four percent of the amount paid for admission and seating accommodations ... in any place of

amusement, entertainment or recreation, games and athletic events[.]"

4. Section 144.020.1(6) imposes a tax equivalent to four percent for all "rooms, meals and drinks furnished at any hotel, motel, tavern, inn, restaurant, eating house, drugstore, dining car, tourist cabin, tourist camp or other place in which rooms, meals or drinks are regularly served to the public."

are liable for sales tax, are exempt under the resale exemption. This includes both tickets sold by the businesses for cash and tickets bundled with other products and sold. The tickets that were sold to timeshare businesses to be given away to persons in exchange for the persons taking timeshare tours, however, were not sold for resale, and those ticket sales by Music City are not exempt under the resale exemption.

Accordingly, this Court reverses the portion of the decision of the commission that found that Music City was not liable for sales tax on the tickets it sold to the timeshare businesses to be given away to persons taking timeshare tours and affirms the remaining provisions of the commission's decision. The case is remanded to the commission.

All concur.