

# In the Missouri Court of Appeals
# Eastern District

## DIVISION FOUR

| | | |
|---|---|---|
| DYNASTY HOME, L.C., | ) | No. ED100993 |
| | ) | |
| Appellant, | ) | Appeal from the Circuit Court |
| | ) | of Franklin County |
| vs. | ) | 10AB-CC00219 |
| | ) | |
| PUBLIC WATER SUPPLY DISTRICT | ) | Honorable Stanley D. Williams |
| NUMBER 3 OF FRANKLIN COUNTY, | ) | |
| MISSOURI, | ) | |
| | ) | |
| Respondent. | ) | Filed:  February 3, 2015 |

Dynasty Home, L.C. ("Dynasty") appeals the trial court's grant of summary judgment in favor of Public Water Supply District No. 3 of Franklin County, Missouri ("the District") on Dynasty's claim for inverse condemnation.  We affirm.

## I.    BACKGROUND

Dynasty, a Missouri limited liability company, is the owner and landlord of residential rental properties in a subdivision in Franklin County, Missouri.  The District is a public water supply district[1] that supplies water and sewer service to the premises of the subdivision.  While the District will open new accounts for water or sewer service in the name of Dynasty or in the

---

[1] Such public water supply districts are creatures of statute and act as public entities with an elected board of directors, have the power of eminent domain and have defined service territories.  Section 247.010 RSMo 2000; section 247.060 RSMo Supp. 2012 (incorporated amendments effective at the time of hearing); section 247.050.7 RSMo 2000; section 247.030 RSMo Supp. 2003.

name of the tenant, Dynasty requires its tenants to procure service with the District in their own names.

The District has published rules and regulations governing the terms of its service pursuant to section 247.050(17) RSMo Supp. 2008.[2] In accordance with these rules and regulations, customers are billed on the 24th of each month for that month's service. The monthly billing invoice reads that the balance on the account is due twenty days after the billing date. If the balance is not paid within twenty days, the account is considered delinquent, and a late fee of ten percent is added to the balance. If the customer does not pay the past due amount and the late fee within forty-five days of the original bill, the account becomes subject to discontinuation of service.

On a monthly basis, the District sends correspondence to subdivision tenants who are delinquent in payments for their water and sewer accounts. The correspondence advises that the delinquencies must be paid within a certain time to avoid disconnection of service. Pursuant to section 250.140.2 RSMo Supp. 2006,[3] when a tenant is delinquent in payment for services by thirty days, the District is also required to notify Dynasty of the delinquency. The District only discontinues services when accounts are delinquent by forty-five days or at the request of the tenant. When a tenant's service is discontinued for nonpayment, the District requires the property owner, Dynasty, to pay up to ninety days of charges and late penalties assessed to the account, pursuant to section 250.140.2.

Beginning July 2008, Dynasty has requested the District terminate service to the listed tenants whose accounts are delinquent by thirty days. To date, the District refuses these requests because Dynasty is not the named customer on the account.

---

[2] All further references to section 247.050 are to RSMo Supp. 2008.
[3] All further references to section 250.140 are to RSMo Supp. 2006.

In July 2010, Dynasty filed the instant petition for inverse condemnation against the District for its refusal to terminate service as Dynasty requested, thereby increasing Dynasty's liability for delinquent service charges and late penalties. Both parties filed motions for summary judgment, and the trial court granted the District's motion. This appeal followed.

## II. DISCUSSION

In its sole point on appeal, Dynasty asserts the trial court erred in granted summary judgment in favor of the District on Dynasty's inverse condemnation claim because the District's refusal to terminate services at Dynasty's request constitutes a taking.

### A. Standard of review

Summary judgment is reviewed essentially *de novo* and affirmed only where there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. *ITT Commercial Finance Corp. v. Mid-America Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). We review the record in the light most favorable to the party against whom judgment was entered. *Roberts v. BJC Health System*, 391 S.W.3d 433, 437 (Mo. banc 2013).

### B. Inverse condemnation

A claim for inverse condemnation arises from Article I, Section 26 of the Missouri Constitution, which provides that "private property shall not be taken or damaged for public use without just compensation." The property owner need not show an actual taking of property, but "must plead and prove an invasion or appropriation of some valuable property right which the landowner has to the legal and proper use of his property, which invasion or appropriation directly and specially affects the landowner to his injury." *Heuer v. City of Cape Girardeau*, 370 S.W.3d 903, 914 (Mo. App. E.D. 2012) (quotations omitted). Inverse condemnation is the exclusive remedy when private property is damaged by a nuisance operated by an entity having

3

the power of eminent domain. *Miller v. City of Wentzville*, 371 S.W.3d 54, 57 (Mo. App. E.D. 2012).

**C.      Statutory authority**

Dynasty claims that it has suffered an invasion of its property rights and a taking because the District refuses to terminate service at Dynasty's request, subjecting Dynasty to delinquent service charges and late penalties. Specifically, Dynasty asserts that it has the right to terminate service because both the tenant and Dynasty are deemed furnishees of the District's services pursuant to section 250.140.1, regardless of the fact that the accounts are in tenants' names.

The District responds that section 250.140.1 affords Dynasty no such right because it only addresses Dynasty's liability, but does not provide it with extra rights or powers. The District further argues that it has lawfully implemented internal rules and regulations pursuant to section 247.050(17), which dictate that services will only be terminated if an account is not paid forty-five days from the date of the bill or at the request of the "customer."

Dynasty, in turn, responds that the District's rules and regulations are invalid because Rule 8(A), providing that "[w]ater and/or sewer service shall be deemed to be furnished to both the occupant and/or the owner of the premises receiving service," conflicts with section 250.140.1 and the District has therefore exceeded its rulemaking authority. All roads lead to the correct meaning of section 250.140.1.

Statutory interpretation is an issue of law that we review *de novo*. *Finnegan v. Old Republic Title Co. of St. Louis, Inc.*, 246 S.W.3d 928, 930 (Mo. banc 2008). "The primary rule of statutory interpretation is to ascertain the intent of the General Assembly from the language used and to give effect to that intent." *Id*. To determine legislative intent, words are to be given their plain and ordinary meaning. *Id*. We do not read any part of the statute in isolation, but

4

consider the context of the entire statute and harmonize its provisions. *Berra v. Danter*, 299 S.W.3d 690, 696 (Mo. App. E.D. 2009).

We begin with section 250.140.1 which provides:

Sewerage services, water services, or water and sewerage services combined shall be deemed to be furnished to both the occupant and owner of the premises receiving such service and, except as otherwise provided in subsection 2 of this section, the city, town, village, or sewer district or water supply district organized and incorporated under chapter 247 rendering such services shall have power to sue the occupant or owner, or both, of such real estate in a civil action to recover any sums due for such services less any deposit that is held by the city, town, village, or sewer district or water supply district organized and incorporated under chapter 247 for such services, plus a reasonable attorney's fee to be fixed by the court.

Dynasty argues that because the statute deems it to be a furnishee, it should have the same right to terminate service that the occupant has. We disagree. While section 250.140.1 does deem services to be furnished to both owner and occupant, the statute does not state, and it does not follow, that both parties share equal rights over the terms of the service. Reading section 250.140.1 as a whole, it is clear that the legislative intent of the dual furnishee rule is for property owners and occupants to share liability. The statute specifically grants the entity providing service the right to sue both occupant and owner over unpaid bills and the right to obtain attorney's fees. The purpose of the statute, then, is to benefit the entity providing service, not the property owner. In fact, the Missouri Supreme Court has stated that the purpose of section 250.140.1 is to afford the entity providing service with a personal remedy against the property owner who connects its property to a public water service, because such connections provide a valuable right not possessed by unconnected properties. *City of Maryville v. Cushman*, 249 S.W.2d 347, 354 (Mo. banc 1952). Dynasty has failed to cite to any controlling authority to

5

support its contention that section 250.140.1 provides it with any rights or remedies,[4] as opposed to the additional obligations the section imposes in exchange for the valuable benefit conferred by the entity providing services.

Further, other subsections of section 250.140 make it clear that owner and occupant of served properties have different rights and obligations with respect to water and sewer services, despite the fact that they are both deemed furnishees. For example, section 250.140.5 states that when the property owner applies for services with the utility, the occupant is not liable for the owner's delinquent payment of a bill. This is directly opposite of section 250.140.1, which holds the property owner liable for non-payment by an occupant. When read together, sections 250.140.5 and 250.140.1 reveal a legislative intent for there to be preferential treatment for occupants at the expense of property owners, despite the fact that both are deemed furnishees.

Finally, the properties in question receive water and sewer service subject to the District's internal rules and regulations. Public water supply districts are statutorily permitted "[t]o make general rules and regulations in relation to the management of the affairs of the district." Section 247.050(17); *Cushman*, 249 S.W.2d at 354 (affirming that public water or sewerage providers have the right "to prescribe reasonable terms upon which the owner may have such services connected to his property"). Here, the District's rules state that services will only be terminated if an account is not paid forty-five days from the date of the bill or at the request of the "customer." The rules and regulations define "customer" as "[a]ny person, persons, firm,

---

[4] Dynasty also argues that section 250.140.2 supports its claim that it has the right to discontinue service. The section provides, in relevant part, that "[w]hen the occupant is delinquent in payment for thirty days, the city, town, village, sewer district, or water supply district shall make a good faith effort to notify the owner of the premises receiving such service of the delinquency and the amount thereof." This section merely ensures that a property owner receives notice of their future liability for the unpaid bills of their tenants. It does not discuss the property owner's rights or powers.

corporation or partnership using or allowing the use of water and/or sewer service(s) provided by the District."

Dynasty does not assert that it is a "customer" within the meaning of the rules and regulations, as it does not use the incoming water services itself. If Dynasty established the accounts in its own name, then billed the tenants for the water they used, it would be a customer, and it may have the right to terminate services at its discretion.[5] Dynasty has instead chosen that its tenants establish accounts in their own names. The tenants therefore have a contractual relationship with the District, and they have the right to terminate services pursuant to the terms of the contract. Dynasty has elected not to be a party to the contract, and therefore it does not have the same rights as the parties have to end services.

Rather than assert contractual rights, however, Dynasty contends that the District's rules and regulations are invalid, and therefore do not control the outcome here. Such rules and regulations adopted pursuant to statutory authority are deemed prima facie reasonable. *Foremost-McKesson, Inc. v. Davis*, 488 S.W.2d 193, 197 (Mo. banc 1972). The party challenging rules or regulations carries a "heavy burden" of showing they "bear no reasonable relationship to the legislative objective" such that they are "unreasonable and plainly inconsistent with the act." *Id.* Dynasty has not met this burden.

Dynasty argues that the District's rules and regulations are invalid because Rule 8(A) does not share the exact same phrasing as section 250.140.1. As stated above, section 250.140.1 provides, in relevant part, that "[s]ewerage services, water services, or water and sewerage services combined shall be deemed to be furnished to both the occupant *and* owner of the

---

[5] Dynasty may have the right within the terms of its contract with the District to terminate services, but Dynasty would probably be barred from such termination without cause by other aspects of landlord-tenant law. *See* section 441.233.2 RSMo 2000 (barring constructive eviction of a tenant through the interruption of essential services, including water and sewer service). However, those considerations are beyond the scope of the instant case.

premises receiving such service" (emphasis added). Rule 8(A) of the District's rules and regulations states "Water and/or sewer service shall be deemed to be furnished to both the occupant *and/or* the owner of the premises receiving service" (emphasis added). Dynasty asserts this difference between "and" and "and/or" invalidates the rule, but the distinction is immaterial. In practice, the District does not furnish services to the tenant *or* Dynasty. The District relies on the fact that it furnishes services to both tenant *and* Dynasty in order to bill Dynasty for unpaid service through joint and several liability, as contemplated by the rule and section 250.140.1. If the District were only furnishing services to the tenant (relying on the "or" language), then it would have no recourse to bill Dynasty for outstanding amounts. In other words, the District treats the rule as if it only reads "and," not "or," and any additional rights it grants the tenants arise from their contractual relationship, not from Rule 8(A).

Dynasty has not met its burden to show that the District's rules and regulations bear no reasonable relationship to the legislative objective or that they are unreasonable and plainly inconsistent with section 250.140.1. Because the District's rules and regulations on the termination of service are valid, and because section 250.140.1 does not grant it any additional rights or powers, Dynasty does not have the right to terminate service at its request. Therefore, Dynasty does not have a property right to be infringed, and it has not suffered a taking. Point denied.

### III.    CONCLUSION

The trial court's grant of summary judgment in favor of the District is affirmed.

_____
ROBERT M. CLAYTON III, Judge

Patricia L. Cohen, P.J., and
Roy L. Richter, J., concur.

8